# EXHIBIT A

**HILL, FARRER & BURRILL LLP**
STEPHEN J. TOMASULO (Bar No. 181013)
One California Plaza, 37th Floor
300 South Grand Avenue
Los Angeles, CA 90071-3147
Telephone: (213) 620-0460
Fax: (213) 624-4840

Attorneys for Plaintiff
PJAM LLC

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAR 20 2018

Sherri R. Carter, Executive Officer/Clerk
By: Tom G. Holmes, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| PJAM LLC,<br><br>Plaintiff,<br><br>vs.<br><br>XX GLOBAL, INC., JAQUES WEBSTER, and DOES 1-20, inclusive,<br><br>Defendants. | CASE NO. SC129025<br><br>**COMPLAINT FOR**<br><br>1. Breach of Written Contract<br><br>**DEMAND FOR JURY TRIAL**<br><br>**CASE MANAGEMENT CONFERENCE**<br><br>9-17-18   8:30am<br>Judge Mitchell L. Beckloff   Date   Septm |

Plaintiff PJAM LLC hereby alleges as follows:

### PARTIES

1. Plaintiff PJAM LLC is a New York limited liability company which is in the business of putting on concerts and other entertainment events. PJAM LLC is authorized to and does conduct business in California.

2. Plaintiff is informed and believes that defendant Jacques Webster is an entertainer who performs under the name Travis Scott and that Webster resides in the County of Los Angeles in the State of California.

3. Defendant XX Global, Inc. is a Delaware corporation authorized to do business, and doing business, in California. Plaintiff is informed and believes that XX Global, Inc. is the legal

1 agent and representative of Jacques Webster and that Jacques Webster pursues his entertainment business through this entity. Plaintiff is informed and believes that XX Global, Inc.'s principal place of business in Los Angeles is at 10960 Wilshire Blvd., Los Angeles, CA 90024.

4. Plaintiff is unaware of the true names and capacities of Does 1 through 20 and therefore sues them using fictitious names. Plaintiff will amend this Complaint to reflect the Doe defendants' true names and capacities when Plaintiff discovers that information. Plaintiff is informed and believes that each Doe defendant is in some manner responsible for the acts, omissions, and matters alleged in the Complaint.

5. Plaintiff is informed and believe, and thereon alleges, that at all times material herein, defendants, including each defendant sued under a fictitious name, were the agent, servant, employee, representative and/or alter ego of the remaining defendants, and that in so doing the things alleged herein, were acting within the course and scope of its/his/her authority as such agent, servant, employee, representative and/or alter ego, with permission and consent of the remaining defendants.

## BREACH OF WRITTEN CONTRACT

### (Against all Defendants)

6. The 2018 Super Bowl took place in Minnesota on Sunday February 4, 2018. Recognizing this as a commercial opportunity, Plaintiff planned to host a large weekend event that would include high end parties and entertainment. Plaintiff invested a great deal of time and expended significant sums of money planning this event. Plaintiff planned and organized this event under the dba Twin Cities Live.

7. As part of its Super Bowl weekend event, Plaintiff sought out a celebrity entertainer to perform at a party on Saturday February 3, 2018. Consequently, Plaintiff entered into a written contract on January 24, 2018 with XX Global, Inc. and Jacques Webster pursuant to which Webster agreed to perform in a venue known as Myth Live in Minnesota on February 3, 2018. A copy of that contract is attached as Exhibit A to this complaint.

8. In compliance with its contractual duties, Plaintiff advanced $150,000 to XX Global, Inc. and Mr. Webster as well as a $10,000 fee to Mr. Webster's booking agent. Plaintiff also

expended significant sums arranging for a private jet for Mr. Webster and those who were to accompany him to Minnesota. This was in addition to the significant sums Plaintiff paid to advertise this event, lease a large entertainment venue and to hire a staff of waiters, bartenders and other assistants for the night. Plaintiff also complied with all other material terms of the contract.

9. On February 3, 2018, Webster advised Plaintiff that despite his contractual obligations, he refused to show up for the event. Thus, XX Global, Inc. and Webster materially breached the contract even though Plaintiff had complied with all material terms of the contract. As a result of this breach, Plaintiff suffered significant damages including the sums paid to XX Global and Mr. Webster and their booking agent, the sums paid to arrange Webster's travel, the sums paid to advertise the event, lease the venue and hire staff, and the lost profits Plaintiff would have realized on this event. In addition, Plaintiff has suffered reputational harm based upon its failure to produce a performance by Mr. Webster as it had advertised.

## PRAYER

NOW, THEREFORE, Plaintiff prays for judgment as follows:

1. For damages against all defendants in an amount to be proven at trial;

2. For costs of suit and attorney's fees incurred in prosecuting this action;

3. For prejudgment interest;

4. For such other and further relief as the Court may deem just and proper.

DATED: March 20, 2018

HILL, FARRER & BURRILL LLP

By: _____
STEPHEN J. TOMASULO
Attorneys for Plaintiff
PJAM LLC

## DEMAND FOR JURY TRIAL

Plaintiff PJAM LLC hereby demands a jury trial.

DATED: March 20, 2018

HILL, FARRER & BURRILL LLP

By: _____
STEPHEN J. TOMASULO
Attorneys for Plaintiff
PJAM LLC

HFB 1892400.1 P6550002

As of January 24, 2018

Travis Scott

RE: <u>2018 Super Bowl Concert/Appearance – Travis Scott</u>

To Whom It May Concern,

This letter sets forth the basic terms and conditions of the agreement between Twin Cities Live ("Company") and XX Global, Inc. ("Lender") f/s/o Travis Scott ("Artist") with respect to his participation in Company's party (the "Event") in connection with the 2018 Super Bowl, to take place in and around Minneapolis, Minnesota on or about February 3, 2018.

| | |
|---|---|
| EVENT DATE/DETAILS: | Saturday, February 3, 2018, 11:45 PM<br>Venue: Myth Live, 3090 Southlawn Dr., Maplewood, MN 55109 |
| IN-PERSON SERVICES: | On the Event Date, Artist will make a thirty (30) minute appearance at the Venue, including a performance (collectively, the "Services"). |
| POSTS: | Artist shall be responsible to post one (1) unique social media post (the "Post") promoting the Event on Artist's owned/controlled websites/social media channels (i.e., Twitter, Instagram or Facebook) (collectively, "Artist Pages"). |
| COMPENSATION: | $200,000 guaranteed ("Fee"). The Fee shall be "all-in" and include any and all services in connection with the Event (including without limitation, the results and proceeds of the Services), and any travel, accommodations and expenses in connection with Artist rendering the Services (unless otherwise stated herein); provided that Artist shall be entitled to the following accommodations in addition to the Fee: (i) private airfare to and from the Event (i.e., from Los Angeles to the Event and from the Event to Las Vegas, or as otherwise determined by Artist); and (ii) exclusive first-class ground transportation on all travel legs to and from the Event.<br><br>50% of the Fee will be paid to Lender promptly following signature of this deal memo, 25% of the Fee will be wired on Friday, February 2, 2018, and 25% of the Fee will be payable in cash following completion of the Services at the Event. |
| SPONSORS: | Company shall immediately notify Lender and Artist (and/or Artist's representatives) of the sponsors of the Event so as to allow for Artist to waive any conflicts which may exist based on any pre-existing third-party sponsorships. Artist may present potential sponsors for the Event for Company's consideration. In the event such potential sponsors enter into a sponsorship agreement with Company, Company and Artist shall negotiate in good faith with respect to Artist's entitlement to a percentage of profits thereunder. In the event Artist and Company are unable to come to terms within five (5) business days of commencement of negotiations thereof, Company shall have no further obligations to Artist in connection therewith. Nothing herein shall limit Company's ability to seek sponsorships for the Event. |
| ASSETS: | Promptly following the execution hereof, Artist shall provide Company with a reasonable amount and variety of high-resolution photographs, videos, and marketing assets (e.g., logos) (collectively, the "Assets") to |

EXHIBIT A

|   |   |
|---|---|
|   | be used by Company in the advertising and promotion of the Event on social media and the Event's website. Artist represents and warrants that the approved Assets may be used solely for such purpose. |
| RIGHTS: | Company shall have the right to use the Artist's approved likeness, name, approved biography and voice (collectively, the "Material") solely in connection with the production, advertising and promotion of the Event. |
| RECORDINGS: | Company shall not record Artist or authorize any third party to record Artist at any time before, during or after the Event without Lender's or Artist's (or Artist's representative's) prior written approval. |
| REPRESENTATIONS: | Company and Lender warrants and represents that they each (a) have the right to enter into this agreement and grant the rights herein granted, (b) no permission from any third party is required for Lender and/or Company to grant the rights herein granted, and (c) the parties hereto have not and will not disparage Artist, Lender, the Event or Company. |
| INSURANCE: | (a) Company agrees to procure and maintain for the duration of the Event, and for a period of two years thereafter, insurance against claims for injuries to persons or damage to property which may arise from or in connection with the Event and/or the operation of the Venue. Company shall provide coverage at least as broad and with limits of liability not less than those stated below. |

(i)   Commercial General Liability Insurance – Occurrence Form.

| | |
|---|---|
| General Aggregate | $2,000,000 |
| Products-Completed Operations Aggregate | $2,000,000 |
| Liquor Liability | $1,000,000 |
| Personal & Advertising Injury | $1,000,000 |
| Each Occurrence | $1,000,000 |

(ii)   Automobile Liability Insurance.

Combined Single Limit Per Accident for Bodily Injury and Property Damage     $1,000,000

(iii)   Worker's Compensation Insurance.

Minnesota Workers' Compensation.     Statutory

(b) All insurance policies procured in compliance with this paragraph must be issued by an insurance carrier authorized to do business in the state of Minnesota, with a minimum rating of A-VII or better by A.M. Best Inc. The insurance shall contain a provision that said insurance cannot be reduced or cancelled unless and until the insurance company notifies Lender thirty (30) days prior as certificate holder. All liability insurance policies must contain cross liability endorsements or their equivalent (Separation of Insureds or Severability of Interest provisions). Company shall list Lender and Artist as additional insureds on all policies and coverage for the additional insureds shall apply on a primary basis irrespective of any other insurance whether collectible or not. The additional insured endorsement shall be interpreted as (1) limiting coverage to the additional insured "only to the extent permitted by law";

(2) providing that coverage to the additional insured will not be broader than that which the named insured is required by the contract or agreement to provide; and (3) limiting the amount the insurer is required to pay out to the amount of insurance (a) required by the contract or (b) available under the applicable limits of insurance, whichever is less. For clarification, in no event shall any limitation in Company's insurance, or Lender's or Artist's status as an additional insured, be construed as a limitation of liability of Company hereunder, including, but not limited to, in connection with Company's material breach, violation of law, ordinance or statute, Company's breach of its indemnification obligations. For the avoidance of doubt, in no event shall Company be required to indemnify Artist or Lender from the Artist's or Lender's own negligence or the negligence of Lender's or Artist's employees, contractors or agents, nor shall Artist or Lender seek coverage as an additional insured for Artist's or Lender's own negligence, or the negligence of Artist's or Lender's employees, contractors or agents.

(c) Proof of Insurance; Waiver of Contribution; Subrogation. Upon signature hereof, Company shall supply Lender with proof of the insurance identified in this section by providing a certificate of insurance to Lender naming Lender and Artist as additional insureds. Company shall not seek contribution, and all insurance policies procured by Company in compliance with this section shall contain a waiver of subrogation rights.

**INDEMNITY:** Lender agrees to defend, indemnify, and hold harmless Company and their respective parents, subsidiaries, affiliates, licensees, officers, directors, employees and agents from and against any and all claims, liability, loss and damage, including reasonable outside attorneys' fees, arising out of or resulting from Lender or Artist's breach of any obligation or any warranty or representation set forth herein.

Company agrees to defend, indemnify, and hold harmless Lender, Artist and their respective parents, subsidiaries, affiliates, licensees, officers, directors, employees and agents from and against any and all claims, liability, loss and damage, including reasonable outside attorneys' fees, arising out of or resulting from the Event or Company's breach of any obligation or any warranty or representation set forth herein.

**CONFIDENTIALITY:** All confidential, non-public information furnished to one party to the other, including but not limited to, the terms of this Agreement, and any Material created hereunder shall be deemed proprietary and shall be held by the receiving party in strict confidence and shall not be disclosed or revealed or shared with any other person except those individuals or entities specifically authorized by the disclosing party in advance, other than as required by law. Except as otherwise set forth herein, all publicity and promotion for the Event shall be run through Company.

**MISCELLANEOUS:** It is agreed that the entire understanding between Artist and Company with respect to the subject matter of this Agreement is set forth herein and that any waiver, modification or addition to this agreement shall not be valid unless in writing and signed by Artist and Company. This agreement shall be interpreted, enforced and governed under the laws of the State of Minnesota without regard to its conflict of laws principles.

Please sign below indicating your acceptance of this offer and email a copy back to me as soon as possible.

Best regards,

Twin Cities Live

*[signature]*

Signature

Jefferson agar / managing partner
Print Name/Title

January 26, 2018
Date

Accepted and Agreed to:

XX Global, Inc.

*Jacques Webster*
Signature

Jacques Webster
Print Name

Jan. 28, 2018
Date