**HILL, FARRER & BURRILL LLP**
STEPHEN J. TOMASULO (Bar No. 181013)
One California Plaza, 37th Floor
300 South Grand Avenue
Los Angeles, CA 90071-3147
Telephone: (213) 620-0460
Fax: (213) 624-4840
E-mail: stomasulo@hillfarrer.com

Attorneys for Plaintiff and Counterclaim Defendant PJAM LLC, and Counterclaim Defendants JEFFERSON AGAR, ALEX MARTINI and PATRICK JOHNSTON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

PJAM LLC,

Plaintiff,

vs.

XX GLOBAL, INC., JACQUES WEBSTER, and DOES 1-20, inclusive,

Defendants.

XX GLOBAL, INC. and JACQUES WEBSTER,

Counterclaimants,

vs.

PJAM LLC, JEFFERSON AGAR, ALEX MARTINI, PATRICK JOHNSTON, and ROES 1 through 10, inclusive,

Counterclaim Defendants.

CASE NO. 2:18-cv-03192 JFW (MRWx)

Judge: John F. Walter

**OFFER OF PROOF RE EXPERT OPINIONS OF ALEX MARTINI (PURSUANT TO MARCH 18, 2019 ORDER)**

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

Pursuant to the Court's March 18, 2019 Order, Plaintiff PJAM LLC ("PJAM) hereby submits its offer of proof regarding the opinions to be offered by its expert witness Alex Martini. Mr. Martini will offer three opinions which are set forth below. Each opinion relates to the revenues/profits PJAM would have realized had defendant Jacques Webster (who performs under the name Travis Scott) showed up and performed as contemplated in the contract at issue in this litigation. Defendants do not contest the relevance of any of Mr. Martini's opinions.[1] Rather, they oppose their admissibility on other grounds.

**OPINION 1: PJAM would have sold at least 2,000 general admission tickets at an average price of at least $300, for a total of $600,000 if Mr. Webster/Scott had shown up and performed.**

This opinion is based largely on Mr. Martini's 20 years of experience in which he has promoted hundreds if not thousands of concerts, performances and related events. His experience is detailed in Mr. Martini's report, particularly Exhibits 1 and 2 to that report. Exhibit 1 details domestic and international venues at which he has produced or promoted shows. Exhibit 2 lists domestic and international events and festivals with which Mr. Martini has been associated that have collectively generated millions of ticket sales. His report is listed as Trial Exhibit 13.

Mr. Martini acquired specific information relevant to the Super Bowl Event. Mr. Martini served as the CEO of PJAM in connection with putting on the Super Bowl Event. PJAM spent approximately $1.5 million to put on the event, which included tens of thousands of dollars promoting the event on many social media platforms. These expenses are reflected in Trial Exhibits 2 (Collection of Wells Fargo wire transfer records), 4 (8/28/2017 Agreement with Moxy Hotels), 5

[1] This was confirmed in a March 21, 2019 e-mail exchange between Stephen Tomasulo, counsel for PJAM, and Matthew Cave, counsel for Defendants.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

(12/10/2017 Group Sales Agreement with Emerald Inn.), 6 (2/5/2018 Emerald Inn sales receipt), 7 (Beverage distributor price list), 8 (PJAM payroll journal), 9 (Twin City Live budget), 10 (Employee list), 11(Chase Bank statements) and 12 (PJAM transaction detail report). This experience supplemented his already extensive knowledge as to the revenues one might realistically expect to receive at a Super Bowl event where a major star was to perform.

Mr. Martini also researched the revenues generated by another VIP event in Minnesota on the same night as Travis Scott was supposed to show up and perform at Myth Live. That event was hosted by Tao and, without a high end performer, generated more than $300,000 just in ticket sales. He also reviewed pricing for other events occurring that night in Minnesota, in particular that events hosted by Playboy and Maxim were charging entrance fees in excess of that reflected in Opinion 1 here.

Mr. Martini also looked into what similar types of events – other than the ones he had hosted - had generated in revenues. In this regard, he consulted with counterclaim defendant Jefferson Agar, who assisted him in the preparation of our 2018 Super Bowl event. Mr. Agar works as the director of sales and VIP services at the Mirage in New York City. The Mirage is similar in size to the Myth Live venue at which Mr. Webster/Scott was to perform. Mr. Agar provided revenue data for a performance in 2018 by Drake, a high profile hip hop artist. That event generated over $800,000 in revenues. Although New York City is a different market than Minnesota, Mr. Martini believed that the fact that PJAM's event was to be held on the Saturday of the Super Bowl in Minnesota weekend makes this a reasonable comp.

Mr. Martini also researched how successful Travis Scott's performances have been. In particular, he noted that he sold out Madison Square Garden and performed at the halftime of this year's Super Bowl.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

He also considered the fact that PJAM generated more than $100,000 in revenues at Myth Live the night before Travis Scott was to perform, with a lower profile act than Mr. Scott. Typically, the Saturday before a Super Bowl generates much larger revenues than the Friday night. This is because people tend to arrive on Friday and are less inclined to go out. Given Travis Scott's high profile status and the fact that he was to perform on Saturday, it is reasonable to expect that revenues would be many times higher than Friday. Also, between Mr. Scott and his booking agent, they were charging $235,000 for his performance. Implicit in the concept of demanding that type of fee is the fact that one can expect to generate much more than that in revenue.

Mr. Martini also noted Mr. Webster/Scott's record of selling out venues and discussed his opinions with nightlife venue owners including Eddie Dean, who owned a venue where Mr. Scott sold 8,000 tickets on back to back nights. Moreover, the owner of Myth Live (where the Event was to take place) confirmed Mr. Martini's belief and experience that hip hop shows generate most of their revenue at the door on the day of the event.

**OPINION 2: PJAM would have sold at least an average of $50 worth of drinks to each of the 2,000 general admission entrants, for a total of $100,000 if Mr. Webster/Scott had shown up and performed.**

This is a very conservative opinion based largely upon Mr. Martini's extensive experience in the nightlife industry as to how much people are likely to drink at a VIP event at which high profile artists perform. In addition to the information detailed above, Mr. Martini also considered drink prices (in excess of $15 per drink) and the fact that PJAM sold more than $50 per person on the night before. In addition, he considered the fact that Super Bowl Events tend to attract more males than females, and males tend to drink more than females.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**OPINION 3: PJAM would have sold at least 30 tables at an average price of $5,000 per table, for a total of $150,000 if Mr. Webster/Scott had shown up and performed.**

PJAM had 40 tables available and Mr. Martini believes PJAM would have sold 30 of them. In addition to the information detailed above, this opinion is based largely upon Mr. Martini's extensive experience in the nightlife industry, and his understanding of what wealthy individuals will pay for table service. As reflected in his report, Mr. Martini considered his extensive experience with events that have generated more than $1 million in revenues in a particular night. He considered his many experiences in which tables sold for $5,000, $10,000 or $30,000. He considered that in some instances, he has seen tables sell for more than $100,000.

DATED: March 22, 2019 HILL, FARRER & BURRILL LLP

By: */s/ Stephen J. Tomasulo*
STEPHEN J. TOMASULO
Attorneys for Plaintiff and Counterclaim Defendant PJAM LLC, and Counterclaim Defendants JEFFERSON AGAR, ALEX MARTINI and PATRICK JOHNSTON

HFB 2041715.1 P6550002

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

# PROOF OF SERVICE

I, MONICA MAKIYAMA declare:

I am a resident of the state of California and over the age of eighteen years, and not a party to the within action; my business address is Hill, Farrer & Burrill LLP, One California Plaza, 37th Floor, 300 South Grand Avenue, Los Angeles, California 90071-3147. On March 22, 2019, I served true copies of the following document(s) described below on the interested parties as follows:

**OFFER OF PROOF RE EXPERT OPINIONS OF ALEX MARTINI (PURSUANT TO MARCH 18, 2019 ORDER)**

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by electronic mail: I transmitted a true copy of such document(s) described above, via electronic mail to: see attached service list below.

Matthew J. Cave, Esq.
KING, HOLMES, PATERNO & SORIANO, LLP
1900 Avenue of the Stars, 25th Floor
Los Angeles, CA 90067-4506
Telephone: (310) 282-8989; Facsimile: (310) 282-8903
E-mail: MCave@KHPSLAW.COM

I declare under penalty of perjury under the laws of the United States of America California that the above is true and correct and that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on March 22, 2019, at Los Angeles, California.

*/s/ Monica Makiyama*
MONICA MAKIYAMA